FILED

PEARSON, J.

2014 JUN 30  PM 9:32

U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT M. CIKRAJI, | ) | |
| | ) | CASE NO.  1:13CV2059 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| RICHARD MESSERMAN, *et al.*, | ) | **AND ORDER** |
| | ) | [Resolving ECF Nos. 5, 6, 8, 12, 21, |
| Defendants. | ) | and 28] |

Pending before the Court are: (1) Defendant Judge Stephen Yarbrough's Motion to

Dismiss (ECF No. 5); (2) Defendant Judge Rosemary Grdina Gold's Motion to Dismiss (ECF

No. 6); (3) Defendant Ohio Public Employees Retirement System's Motion to Dismiss (ECF No.

8); (4) Defendant Social Security Administration's Motion to Dismiss (ECF No. 12); (5)

Defendants Magistrate Jason Parker and Child Support Enforcement Agency's Motion to

Dismiss[1] (ECF No. 21); and (6) Plaintiff's Motion for Default Judgment (ECF No. 28).

The Court has reviewed the record, the parties' briefs, and the applicable law.  For the

reasons provided, the Motions to Dismiss are granted, and Plaintiff's Motion for Default

Judgment (ECF No. 28) is denied as moot.

---

[1] CSEA and Magistrate Parker filed a motion to strike Plaintiff's memorandum in opposition on the ground that it was untimely.  ECF No. 27.  Although Plaintiff's opposition brief was filed outside of the time limit imposed by L.R. 7.1(d), the Court will consider the brief in the interest of justice.  The motion to strike is therefore denied.

(1:13CV2059)

# I.  Background

*Pro se* Plaintiff Robert M. Cikraji filed this action under 42 U.S.C. § 1983 against attorney Richard Messerman, Roberta Todd, Cuyahoga County Domestic Relations Court Magistrate Jason Parker, the Child Support Enforcement Agency (CSEA), Judge Stephen Yarbrough, the United States Social Security Administration (SSA), the Ohio Public Employees Retirement System (OPERS), and Cuyahoga County Domestic Relations Court Judge Rosemary Grdina Gold.  Plaintiff alleges violations of federal and state law in connection with divorce and child support enforcement proceedings in the Cuyahoga County Domestic Relations Court.[2]

The complaint alleges the following.  In September 1998, Cikraji and his former spouse, Roberta Todd, entered into an "In-Court Agreement" ("Agreement").  ECF No. 1 at PageID #: 4. The state court judge instructed Todd's attorney, Messerman, to prepare a judgment entry "dissolving the marriage" in accordance with the terms of the Agreement.  *Id.*  Cikraji claims that the judgment entry entered on November 5, 1998 deviated from the terms of the Agreement, was internally inconsistent, and contained an invalid qualified domestic relations order.  *Id.* at PageID #: 5-6.  Cikraji alleges that the court "imposed a dissolution of marriage" and failed to set aside the Agreement for fraud, mutual mistake, or undue influence.  *Id.* at PageID #: 7.

Plaintiff alleges that Judge Yarbrough, Magistrate Parker, and Judge Grdina Gold conducted "hearings" in connection with his domestic relations case without subject matter

---

[2] This is not the first action Plaintiff has filed in federal court regarding his state domestic relations case. *See Cikraji v. Cikraji*, No. 97-3974, 1998 WL 808359 (6th Cir. Nov. 9, 1998); *Cikraji v. Cuyahoga Support Enforcement Agency*, No. C2-01-100, 2001 WL 1681126, at *1 (S.D. Ohio Aug. 30, 2001).

2

(1:13CV2059)

jurisdiction, refused to apply existing law governing retirement benefits, refused to rule on

motions filed by OPERS, and retroactively found that a "divorce" had occurred on 1998. *Id.* at

PageID #: 8-9, 15-16.  In addition, Plaintiff alleges that an August 8, 2003 judgment entry (1)

retroactively modified his child and spousal support obligations; (2) awarded Todd a share of his

retirement benefits; (3) withheld funds from his retirement savings for his support obligations;

(4) and restrained him from taking a lump sum distribution from his retirement accounts.

Based on the above, Plaintiff asserts the following legal claims: breach of contract, fraud,

and conversion against Todd and Messerman (Count One); violations of the Contracts Clause,

the Ex Post Facto Clause, and his due process rights against OPERS (Count Two); violation of

the Agreement against Judge Yarbrough, Magistrate Parker, and Judge Grdina Gold (Count

Three); and failure to verify support calculations under state law against CSEA (Count Four).

## II.  Legal Standard

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364,

365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a "district court may, at

any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule

12(b)(1) of the Federal Rules of Civil procedure when the allegations of a complaint are totally

implausible, attenuated, unsubstantial, frivolous, devoid of merit or no longer open to

discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see Hagans v. Lavine*, 415 U.S.

528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that patently

frivolous claims divest the district court of jurisdiction).

3

(1:13CV2059)

In addition, federal courts are always "under an independent obligation to examine their own jurisdiction," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) and may not entertain an action over which jurisdiction is lacking.  *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982).  Plaintiff has the burden of alleging sufficient information to establish a basis for federal subject matter jurisdiction.  *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).  Lack of subject matter jurisdiction is a non-waivable, fatal defect, which can be raised by the Court at any time.  *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

## III.  Law and Analysis

### A.  *Rooker-Feldman*

Federal district courts do not have jurisdiction over challenges to state court decisions even if they are unconstitutional.  *See D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 483 n. 16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923).  Federal appellate review of state court judgments can only occur in the United States Supreme Court.  *Id.*  This principle, known as the *Rooker-Feldman* Doctrine, states that a party losing his or her case in state court is barred from seeking what in substance would be appellate review of the state judgment.  *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994).  Federal jurisdiction cannot be invoked merely by couching the claim in terms of a civil rights action.  *Lavrack v. City of Oak Park*, No. 98-1142, 1999 WL 801562, at *2 (6th Cir. Sept. 28, 1999); *see Valenti v. Mitchell*, 962 F.2d 288, 296 (3d

4

(1:13CV2059)

Cir. 1992).  Moreover, "there is no federal jurisdiction when the claim is a specific grievance that the law was invalidly—even unconstitutionally— applied in the plaintiff's particular case." *Lovritx v. Connaughton*, 233 F.App'x 469, 474 (6th Cir. 2007) (internal quotations omitted).

Two elements must be satisfied in order for the *Rooker-Feldman* doctrine to apply to bar a claim in federal district court.  First, the issue before the federal court must be inextricably intertwined with the claim asserted in state court.  *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998); *see Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 937 (6th Cir. 2002).  "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." *Catz*, 142 F.3d at 293.  Second, the claim must be a specific grievance that the law was invalidly or unconstitutionally applied in Plaintiff's particular case as opposed to a general constitutional challenge to the law applied in the state action.  *Id.*

Plaintiff asserts claims impugning the state court judgments specifying the amount of his support obligations, directing the payment source for those obligations, and deciding the division of marital property.  Plaintiff alleges that the state court incorrectly applied the law, and seeks an order from this Court reversing the state court's directives.  Any review of the constitutional claims asserted in this context would require the Court to review the specific issues addressed in the state court proceedings against him.  These claims are therefore barred by *Rooker-Feldman*.

(1:13CV2059)

The Court is unpersuaded by Plaintiff's attempts to evade the application of *Rooker-Feldman*.  Plaintiff's reliance on *Lance v. Dennis*, 546 U.S. 459 (2006), is misplaced because unlike the plaintiffs in that case, Plaintiff was a losing party in the state court proceedings.  The *Rooker-Feldman* doctrine applies to "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).  Moreover, the fraud exception to the *Rooker-Feldman* doctrine is unavailable to Plaintiff. *See, e.g.*, *In re Sun Valley Foods Co.* 801 F.2d 186, 189 (6th Cir. 1986).  Plaintiff alleges no facts to support a claim of fraud. *See id; see also* *Smith v. Palasades Collection, LLC*, No. 1:07 CV 176, 2007 WL 1039198, at *4 (N.D.Oh. April 3, 2007) (holding that a claim of fraud is not advanced if a plaintiff's only argument is that "the court did not rule in his favor"); *Belock v. Burt*, 19 Fed. Appx. 323, 325 (6th Cir. 2001) (holding that although plaintiff alleged fraud "the gist of [plaintiff's] federal complaint is that he is unhappy with the results of the state court proceedings.  Federal Courts lack jurisdiction over such a case.")

**B.     Domestic Relations Exception to Jurisdiction**

To the extent Plaintiff seeks to re-litigate the property division and support obligations negotiated in the state domestic relations action, he is unable to do so.  Federal courts will not accept jurisdiction in domestic relations cases. *Gargallo v. Gargallo*, 472 F.2d 1219 (6th Cir. 1973).  In *In re Burrus*, 136 U.S. 586, 593-94 (1890), the Supreme Court stated, "[t]he whole

(1:13CV2059)

subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."  "[U]nder the *Burrus* abstention doctrine, federal courts have universally declined to exercise jurisdiction in domestic relations cases in which a complaint contains only conclusory assertions that a plaintiff is entitled to relief because of the state's constitutional violations, where those assertions are 'a mere pretense and the suit is actually concerned with domestic relations issues.'" *Saunders v. Obama*, No. 1:10-cv-836, 2012 WL 1030473, at *5 (S.D. Ohio Mar. 27, 2012) (quoting *Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2002)).  Accordingly, this Court lacks subject matter jurisdiction over such claims because they fall exclusively within the jurisdiction of the state court.

### C.   *Res Judicata*

A federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state.  28 U.S.C. § 1738; *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 744 (6th Cir. 2002).  Under Ohio law, an existing final judgment or decree is conclusive as to all claims which were or might have been litigated in the first lawsuit. *Nat'l Amusement, Inc. v. Springdale*, 53 Ohio St. 3d 60, 62, 558 N.E.2d 1178 (1990).  The doctrine of *res judicata* requires a plaintiff to present every ground for relief in the first action he files, or forever be barred from asserting it. *Id*.  The state court has already determined that Todd is entitled to child support, spousal support, and to a portion of Plaintiff's retirement accounts.  The state court has

(1:13CV2059)

also determined that Todd and Plaintiff are divorced.  Any attempt to litigate these questions in federal court is barred by the doctrine of *res judicata*.

     **D.**     **Sovereign Immunity**

     The doctrine of sovereign immunity bars the Court from considering any claims against the SSA.  The United States, as a sovereign, cannot be sued without its consent.  *McGinness v. United States*, 90 F.3d 143, 145 (6th Cir. 1996).  A waiver of sovereign immunity must be strictly construed, unequivocally expressed, and cannot be implied.  *United States v. King*, 395 U.S. 1, 4 (1969); *Soriano v. United States*, 352 U.S. 270, 276 (1957).  Because the SSA is an agency of the United States, Plaintiff must demonstrate that the United States waived its sovereign immunity for the claims he is asserting against the SSA.

     Plaintiff provides no indication of what legal claim or claims he is asserting against the SSA.  None is apparent on the face of the complaint.  No cognizable claim was articulated by Plaintiff in response to the SSA's motion to dismiss.  The Court therefore cannot determine whether the United States has waived sovereign immunity.  To state a viable claim against a defendant, a complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory.  *See Schied v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).  District courts are not required to conjure questions never squarely presented to them or to construct claims from sentence fragments.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  To do so would require "[the] courts to explore

(1:13CV2059)

exhaustively all potential claims of a *pro se* plaintiff, . . . [and] would . . . transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.* at 1278 (citation omitted).

In response to the SSA's motion to dismiss, Plaintiff claims that he is being denied social security benefits. ECF No. 26 at PageID #: 224. According to Plaintiff, this denial is "due to an allegation that plaintiff had been receiving OPERS benefits which were, in fact, enjoined by the court." *Id.* This does not allude to a cognizable claim. Again, this is nothing more than the assertion of a legal conclusion that Plaintiff is being denied some benefit that he is legally entitled to receive. Because Plaintiff does not assert a cognizable legal claim against SSA, he cannot demonstrate that the United States has waived sovereign immunity for that type of claim.

### E. Eleventh Amendment

Plaintiff cannot bring a federal civil rights action for damages against CSEA, OPERS, or the individual judicial defendants in their official capacities. The Eleventh Amendment is an absolute bar to the imposition of liability upon states and their agencies. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985). As state agencies, CSEA and OPERS are entitled to Eleventh Amendment immunity. In addition, an official capacity claim asserted against a state or local government officer is the equivalent of a claim asserted against the entity the officer represents. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Because the Domestic Relations

(1:13CV2059)

Court is an arm of the State of Ohio, *Mumford v. Basinski*, 105 F.3d 264, 269 (6th Cir. 1997), a suit against Judge Yarbrough, Judge Grdina Gold, or Magistrate Parker in their official capacities is a suit against Ohio. *Will*, 491 U.S. at 71. Therefore, the Eleventh Amendment is an absolute bar to Plaintiff's claims against the judicial defendants in their official capacities.

Plaintiff's state law claims against the state defendants are also subject to dismissal for lack of jurisdiction. When the Eleventh Amendment bars a litigant's federal claims, federal courts will not exercise jurisdiction over pendent state law claims against state agencies or officials sued in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520-21 (6th Cir. 2007). A federal court will not exercise diversity jurisdiction over such state law claims, either. *See Pennhurst*, 465 U.S. at 121 ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.").

CSEA is immune from the state law claims asserted in the complaint for an independent reason. Ohio Rev. Code 2744.02 provides that, as a general rule, local governmental entities are immune from tort liability. Under this statute, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code. 2744.02(A)(1). To be eligible for immunity under the state, CSEA must be a political subdivision, which is defined as "a

10

(1:13CV2059)

municipal corporation, township, county, or other body corporate and politic responsible for governmental action in a geographic area smaller than that of the state." Ohio Rev. Code 2744.01(F). CSEA falls within this definition.

A three-tiered test determines whether an Ohio political subdivision is immune from liability. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St. 3d 551, 556-57. First, the general rule is that political subdivisions are immune from tort liability "in connection with a governmental or proprietary function." Ohio Rev. Code 2744.02(A)(1). At issue in this case is the collection and distribution of child support. CSEA's actions are performed in connection with a governmental or proprietary function because "a child enforcement agency for a county is the local Title IV-D agency for the county and shall operate a program for support enforcement in the county that complies with Title IV-D of the Social Security Act, as amended, any rules adopted pursuant to that title, and state law." Ohio Rev. Code 3125.11.

The second step is to determine whether any of the five exceptions to the general rule of immunity applies. *Lambert v. Clancy,* 927 N.E.2d 585, 588 (Ohio 2010). The five exceptions are enumerated in Ohio Rev. Code 2744.02(B). If one of the exceptions is applicable, then the court proceeds to the third step of the analysis, which determines whether any codified defense would overcome the applicable exception and grant immunity to the subdivision. *Lambert*, 927 N.E.2d at 588. The Court's analysis does not advance past the second step, because none of the

11

(1:13CV2059)

Ohio Rev. Code 2744.02(B) exceptions to immunity apply.  Therefore, in addition to Eleventh

Amendment immunity, the CSEA enjoys statutory immunity from Plaintiff's state law claims.

      **F.**      **Absolute Judicial Immunity**

      Plaintiff cannot proceed with his claims against Judge Yarbrough, Judge Grdina Gold, or

Magistrate Parker in their individual capacities.  Judicial officers are absolutely immune from

civil suits for money damages.  *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105

F.3d 1111, 1115 (6th Cir. 1997).  Absolute immunity is overcome only in two situations: (1)

when the conduct alleged is performed at a time when the defendant is not acting in a judicial

capacity; or (2) when the conduct alleged, although judicial in nature, is taken in complete

absence of all subject matter jurisdiction of the court over which he or she presides.  *Mireles*, 502

U.S. at 11-12; *Barnes*, 105 F.3d at 1116; *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).

      Plaintiff cannot satisfy first criterion.  The determination of whether an action is

performed in a defendant's judicial capacity depends on the "nature" and "function" of the act.

*Mireles*, 502 U.S. at 13; *Stump* 435 U.S. at 362.  Looking first to the "nature" of the act, the

Court must determine whether the conduct giving rise to the claim is a function generally

performed by a judge.  *Stump*, 435 U.S. at 362.  This inquiry does not involve a rigid scrutiny of

the particular act in question, but rather requires only an overall examination of the judge's

alleged conduct in relation to general functions normally performed by judges.  *Mireles*, 502 U.S.

12

(1:13CV2059)

at 13. Second, an examination of the "function" of the act requires the Court to assess whether Plaintiff dealt with the judicial officers in their respective judicial roles. *Id.*

Based on the complaint, the judicial defendants were acting in their judicial capacities at all relevant times. The issuance of judicial orders pertaining to child and spousal support are all actions normally performed by domestic court judges and magistrates. Plaintiff interacted with the judicial defendants only when they were performing their duties as judicial officers.

Judicial immunity can be defeated when the conduct alleged, although judicial in nature, was taken in complete absence of jurisdiction. *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116. When the immunity of the judge is at issue, the scope of the judge's jurisdiction is to be broadly construed. *Stump*, 435 U.S. at 356-57. A judge will be not deprived of immunity even when the action was performed in error, was done maliciously, or was in excess of authority. *Id.* Actions taken in complete absence of all jurisdiction are those acts which are clearly outside of the subject matter jurisdiction of the court over which the judge presides. *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985); *see Barnes*, 105 F.3d at 1122. That a judicial officer acted in excess of authority does not mean that he or she acted in clear absence of all jurisdiction. *See Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984).

The allegations in the complaint do not plausibly suggest that the judicial defendants acted outside of the jurisdiction of the Domestic Relations Court. Domestic relations judges retain jurisdiction to hear "all domestic relations matters," including the issuance of child support

13

(1:13CV2059)

orders and the division of marital property.  Ohio Rev. Code § 3105.011; *see Whitten v. Whitten, No. 90236, 2008 WL 2681139 (Ohio Ct. App. July 10, 2008)*; *Kelly v. Kelly, No. 2008 CA 28, 2009 WL 4811103 (Ohio Ct. App. Dec. 11, 2009)*.  Plaintiff complains that the judicial defendants issued orders that he believes to be factually mistaken and contrary to Ohio law.  If true, Plaintiff's only remedy is an appeal of the orders in question in state court.

The Court is not persuaded by Plaintiff's argument that judicial immunity does not apply to Judge Yarbrough.  In Plaintiff's view, because Judge Yarbrough presided over the case as a visiting judge, he was an independent contractor, not a judicial officer.  The Supreme Court has observed that "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions without apprehension of personal consequences to him." *Bradley v. Fisher, 80 U.S. 335, 347 (1871)*.  Moreover, immunity analysis is informed by "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White, 484 U.S. 219, 228 (1988)*.  Judge Yarborough, though on assignment, was still acting as a judicial officer.  Therefore, he is protected by the shield of judicial immunity.

## G.    **Failure to State a Federal Cause of Action**

The complaint fails to state any cognizable federal claims for relief.  In order to state a claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) he was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States; and (2) the

14

(1:13CV2059)

deprivation was caused by a person acting under color of state law.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978).  Plaintiff alleges that the defendants deprived him of his due process rights by interfering with his collection of retirement benefits and by relying on erroneous child support calculations.[3]

The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law."  It does not prohibit every deprivation by the state of a person's life, liberty or property.  *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).  Only deprivations conducted without due process are actionable under § 1983.  *Id.*

It is not clear whether the complaint asserts a claim for procedural due process, substantive due process, or both.  To the extent Plaintiff asserts a procedural due process claim, it must be dismissed.  To prevail on a procedural due process claim, Plaintiff must plead and prove either: (1) that he was deprived of property as a result of an established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a random and unauthorized act and that available state remedies would not be

---

[3] To the extent Plaintiff seeks to hold Messerman and Todd liable under § 1983, the complaint fails to state a claim for relief.  Under § 1983, the person acting under color of state law is usually a state or local government employee.  *Doyle v. Schumann*, No. 1:07 CV 3684, 2008 WL 397588, at *3 (N.D. Ohio Feb. 11, 2008).  A plaintiff does not have a cause of action under § 1983 against a private party no matter how wrongful the party's conduct.  *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).  Messerman and Todd are private actors.  There are no allegations plausibly suggesting that they acted under color of state law.  Therefore, § 1983 cannot be asserted against them.

15

(1:13CV2059)

adequate to redress the deprivation of property.  *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983).  Plaintiff alleges only that he was deprived of his property as a result of the defendants' unauthorized acts.

To state a procedural due process claim based on allegedly unauthorized acts, Plaintiff must plead and prove that state remedies for redressing the wrong are inadequate.  *Macene*, 951 F.2d at 706; *Vicory*, 721 F.2d at 1064.  The Domestic Relations Court's support orders are appealable in the Ohio courts of appeals.  *See Depascale v. Finocchi*, No. 08 MA 216, 2010 WL 3904163, at *15 (Ohio Ct. App. Sept. 30, 2010).  Plaintiff does not allege that this remedy is inadequate.  Thus, Plaintiff has not stated a procedural due process claim.

To the extent Plaintiff asserts a substantive due process claim, it too is subject to dismissal.  There are two types of substantive due process claims.  The first type includes claims that involve official acts that are unreasonable, arbitrary, and cause a deprivation of a substantive federal right.  *Mertik v. Blalock*, 983 F.2d 1353,1367 (6th Cir. 1993); *Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir. 1989).  Plaintiff does not allege this type of claim.  The other type is directed at official acts that "so shock the conscience" that they are unconstitutional regardless of the procedural protections provided.  *Parate*, 868 F.2d at 832. The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights."  *Id*.  Plaintiff alleges no facts suggesting the defendants' actions meet this extreme standard.

16

(1:13CV2059)

Plaintiff also has no claim under either the Ex Post Facto Clause or the Contracts Clause of the United States Constitution.  "The Ex Post Facto Clause prohibits any law which increases the punishment for a crime, or which produces a sufficient risk of increasing the punishment for a crime, beyond that prescribed when the crime was committed."  *Kilbane v. Kinkela*, 24 F. App'x 241, 242 (6th Cir. 2001) (citing *California Dep't of Corr. v. Morales*, 514 U.S. 499, 504 and 509 (1995).  "The Contracts Clause prohibits state and local governments from passing laws that impair the obligation of contracts."  *Charles v. Baesler*, 910 F.2d 1349, 1356 (6th Cir. 1990).

Plaintiff's Contracts Clause and Ex Post Facto Clause claims are undefined and presented as legal conclusions.  Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers,[4] *Haines*, 404 U.S. at 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the Court is not required to conjure unpleaded allegations.  *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Beaudett*, 775 F.2d at 1277.  Threadbare conclusory statements such as these are not sufficient to meet the pleading standards of Rule 8.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff does not allege the passage of any law by the state that either increased a punishment for a crime of which he was convicted or that impaired a contractual obligation.

---

[4] Plaintiff Cikraji is, in fact, an attorney, but he is not currently registered in good standing with the Supreme Court of Ohio.  *See In re Attorney Registration Suspension of Cikraji*, 107 Ohio St.3d 1431 (2005) (suspending Plaintiff for failing to file a Certificate of Registration and pay applicable fees).

(1:13CV2059)

Finally, the majority of Plaintiff's federal claims are time-barred.  In Ohio, the two-year

statute of limitations set forth in Ohio Rev. Code § 2305.16 applies to § 1983 claims.  *LRL*

*Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995).  It is apparent on

the face of the complaint that the statute of limitations has expired.  Plaintiff challenges

Domestic Relations Court findings, orders, and judgments entered in November 1998 and August

2003.  This action was filed on September 17, 2013, beyond the expiration of the time period.

**H.**     **Service of Process**

The SSA argues that Plaintiff failed to perfect service of process.  ECF No. 12-1 at

PageID #: 151.  To perfect service on a United States agency, a party must comply with Rule

4(i)(2) by (1) serving the United States and (2) sending a copy of the summons and the complaint

by registered or certified mail to the agency.  The docket shows that SSA was served by certified

mail.  Although the second requirement is satisfied, the docket does not show that Plaintiff

served the United States.  Rule 4(i)(1) sets forth the following relevant requirements for serving

the United States:

> (A)(i) deliver a copy of the summons and of the complaint to the United States
> attorney for the district where the action is brought–or to an assistant United
> States attorney or clerical employee whom the United States attorney designates in
> a writing filed with the court clerk–or (ii) send a copy of each by registered or
> certified mail to the civil-process clerk at the United States attorney's office; [and]
> (B) send a copy of each by registered or certified mail to the Attorney General of
> the United States at Washington, D.C.

18

(1:13CV2059)

Nothing in the record shows that the summons and complaint was sent by registered or certified mail to the Attorney General. Plaintiff's argument that "the U.S. Attorney's Office Northern District of Ohio [was] sent copies of the complaint" is unavailing. Plaintiff does not demonstrate that process was properly delivered to the United States attorney in accordance with Rule 4(i)(1)(A), or that process was sent by registered or certified mail to the Attorney General in accordance with Rule 4(i)(A)(B).

Rule 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Plaintiff has neither served the SSA within 120 days after the filing of the complaint on September 17, 2013, nor showed good cause for his failure to serve the agency. Accordingly, the SSA is dismissed from this action.

## IV. Conclusion

Based on the foregoing, the various Motions to Dismiss are granted. Plaintiff's Motion for Default Judgment is denied as moot. This case is dismissed.

IT IS SO ORDERED.

June 30, 2014
Date

Benita Y. Pearson
United States District Judge

19